No. 59,470

CITY OF JUNCTION CITY, KANSAS, *Appellant,* v. LINDA L. RILEY,
*Appellee.*

(731 P.2d 310)

Opinion filed January 16, 1987.

*Gregory K. Barker,* city prosecutor, argued the cause and was on the brief for appellant.

*David P. Troup,* of Weary, Davis, Henry, Struebing & Troup, of Junction City, argued the cause and was on the brief for appellee.

The opinion of the court was delivered by

HERD, J.: This is a criminal action wherein the City of Junction City appealed a district court order dismissing a complaint against Linda Riley.

This case was submitted to the Geary County District Court upon a written stipulation of facts.

On January 8, 1986, Junction City police officer Bruce Mac-Meeken was on duty on Grant Avenue within the city limits. The Junction City city limit crosses Grant Avenue at the beginning of the 1100 block of Grant Avenue. While traveling westbound in the 600 to 700 block of Grant Avenue, Officer MacMeeken obtained a radar reading of 47 mph in a 35 mph zone from a 1983 Camaro automobile traveling east towards the Fort Riley military reservation.

Officer MacMeeken turned on his red lights and siren and approached the Camaro, driven by Linda Riley. Instead of slowing down, Ms. Riley increased her speed to approximately 80 mph in the 1000 block of Grant. The pursuit continued until Ms. Riley finally slowed her car and pulled into Mullins Park, located on the Fort Riley military reservation.

After administering field sobriety tests, Officer MacMeeken placed Ms. Riley under arrest for DUI and speeding. She was

taken to the police department in Junction City where a breath test revealed a .20 blood alcohol concentration.

Ms. Riley was originally charged with speeding and driving under the influence. The complaint was later amended to add a third count, fleeing and eluding an officer. Ms. Riley was found guilty of all three charges by the municipal court of Junction City. She then appealed to the Geary County District Court.

The district court ruled that municipal officers have no authority to arrest upon a federal military reservation. The court concluded the stop and arrest of Linda Riley were without lawful authority and any evidence obtained therefrom was suppressed as having been unlawfully obtained. The identity of Linda Riley was a part of that evidence. The court dismissed all three charges of the complaint against the defendant.

The City of Junction City appeals pursuant to K.S.A. 22-3602(b)(1) and K.S.A. 22-3603.

The sole issue on appeal is whether the district court erred in holding that a municipal officer has no authority to make a warrantless misdemeanor arrest on a federal military reservation.

The City contends the actions of its officer were authorized by K.S.A. 1985 Supp. 22-2401a. That statute provides in relevant part:

"(1) Law enforcement officers employed by consolidated county law enforcement agencies or departments and sheriffs and their deputies may exercise their powers as law enforcement officers:

"(a) Anywhere within their county; and

"(b) in any other place when a request for assistance has been made by law enforcement officers from that place or when in fresh pursuit of a person.

"(2) *Law enforcement officers employed by any city* may exercise their powers as law enforcement officers:

"(a) Anywhere within the city limits of the city employing them and outside of such city when on property owned or under the control of such city; and

"(b) *in any other place* when a request for assistance has been made by law enforcement officers from that place or *when in fresh pursuit of a person.*" (Emphasis added.)

The City argues that since K.S.A. 1985 Supp. 22-2401a (2)(b) authorizes municipal officers to exercise their powers "in any other place" when in fresh pursuit of a person, the arrest in this case was proper.

The appellee contends that despite the broad language of K.S.A. 1985 Supp. 22-2401a, that statute is not applicable to arrests upon federal military reservations. Instead, appellee cites K.S.A. 27-105, the statute by which the State of Kansas ceded all

jurisdiction over the Fort Riley military reservation to the United States. The appellee argues that since the legislature did not reserve the power to authorize a Kansas law enforcement officer to make a warrantless misdemeanor arrest on the reservation, no such authority existed since the common law of Kansas in force on the effective date of K.S.A. 27-105 is the applicable law and only felonies were subject to warrantless arrest in fresh pursuit under the common law.

K.S.A. 1985 Supp. 22-2401a was enacted in 1977. Since its enactment, we have had the opportunity to consider its provisions only once—in *State v. Hennessee,* 232 Kan. 807, 658 P.2d 1034 (1983). In *Hennessee,* the court relied on K.S.A. 22-2401a in holding that the Pratt County sheriff acted beyond his authority in arresting the defendant at her residence in Stafford County. The court noted that under K.S.A. 1985 Supp. 22-2401a there are only two instances in which a sheriff may exercise his powers outside his county: (1) When he is in "fresh pursuit" of a person; or (2) when a request for assistance has been made by law enforcement officers from the area for which such assistance is requested. Since neither of these instances was applicable, the *Hennessee* court held the officer was without jurisdiction to make the arrest.

*Hennessee* is inapplicable to this case, however, since *Hennessee* did not involve a situation where an officer was in "fresh pursuit," as we have here.

Before interpreting K.S.A. 1985 Supp. 22-2401a, we should first comment upon two cases cited by the City: *State v. Shienle,* 218 Kan. 637, 545 P.2d 1129 (1976), and *State v. Tillman,* 208 Kan. 954, 494 P.2d 1178 (1972). Both cases were decided by this court prior to the enactment of K.S.A. 1985 Supp. 22-2401a.

In *Tillman,* the defendants fled the scene of a robbery in Wyandotte County, Kansas, and were immediately followed by a private citizen and later by police officers in Jackson County, Missouri. The defendants were arrested 90 minutes later by Kansas officers in Missouri. The issue before the court was whether or not the police officers who arrested the defendants were in fresh pursuit of the defendants at the time the arrests were made. This court held that the circumstances established in *Tillman* clearly showed a "fresh pursuit" within the meaning of the uniform law on fresh pursuit adopted in both Missouri and Kansas (see K.S.A. 22-2404).

The uniform law on fresh pursuit is not involved in this case, nor is it disputed that the officer was in fresh pursuit of the appellee at the time the arrest was made. Rather, it is simply argued the "fresh pursuit" provision is insufficient to give municipal officers jurisdiction to make warrantless arrests for misdemeanors on the Fort Riley military reservation. Thus, *Tillman* is inapplicable here.

A second case cited by the City in support of its argument is *State v. Shienle,* 218 Kan. 637. In *Shienle,* this court held valid an arrest in Missouri by a Kansas police officer of one who had stolen a car in Kansas and driven it to Missouri. Although the arrest was not made in fresh pursuit, the court upheld the arrest as one made by a private person. The court held:

"When an arrest without a warrant is made by a Kansas police officer outside the territorial limits of his jurisdiction the arrest may be a legal private citizen's arrest when it is established that: (1) arrests by private citizens are recognized as legal in the state where the arrest is made; (2) a felony has been or was being committed in that state; (3) the arresting officer had probable cause to believe the person arrested is guilty thereof; and (4) the officer acted reasonably under the exigencies attending the arrest." Syl. ¶ 4.

*Shienle* is also inapplicable here because it involves neither "fresh pursuit" nor arrest for a misdemeanor.

K.S.A. 1985 Supp. 22-2401a(2)(b) permits municipal officers to exercise their powers as law enforcement officers: (1) within the city limits; (2) outside of the city where on property owned or under the control of such city; (3) in any other place when a request has been made by law enforcement officers from that place or when in fresh pursuit of a person. Since it is not disputed that Officer MacMeeken was in fresh pursuit of the defendant, the question then becomes whether "any other place" includes the Fort Riley military reservation.

We have held that in determining whether a statute is open to construction, or in construing a statute, ordinary words are to be given their ordinary meaning and courts are not justified in disregarding the clear intent of the statute appearing from plain and unambiguous language. *State v. Haug,* 237 Kan. 390, Syl. ¶ 1, 699 P.2d 535 (1985).

The City argues K.S.A. 1985 Supp. 22-2401a(2)(b) speaks for itself and needs no further interpretation. The City suggests the phrase "any other place" means what it says and includes federal

military reservations. Appellee contends that Officer MacMeeken had no statutory authority to arrest her on the Fort Riley military reservation because, as a Junction City police officer, he was acting outside the geographic limits of the city. We hold Kansas law authorizes city police to make warrantless arrests for misdemeanors when in fresh pursuit at "any other place," which includes Fort Riley; however, that does not resolve the issue since the legality of an arrest is determined by the law of the place where the arrest is made. *State v. Cooper*, 223 Kan. 175, 176, 573 P.2d 1006 (1977); *State v. Shienle*, 218 Kan. at 640.

Thus, we are faced with the issue of what law applies to the Fort Riley military reservation. The Fort was under Kansas jurisdiction until 1872 when it was ceded to the U.S. Government. The ceding authority is K.S.A. 27-102, which provides:

"That exclusive jurisdiction over and within any lands so acquired by the United States shall be, and the same is hereby, ceded to the United States, for all purposes; *saving, however, to the state of Kansas the right to serve therein any civil or criminal process issued under the authority of the state,* in any action on account of rights acquired, obligations incurred *or crimes committed in said state, but outside the boundaries of such land;* and saving further to said state the right to tax the property and franchises of any railroad, bridge or other corporations within the boundaries of such lands; but the jurisdiction hereby ceded shall not continue after the United States shall cease to own said lands." (Emphasis added.)

This presents the question of whether the savings clause in K.S.A. 27-102 authorizes a warrantless arrest by Kansas police officers on the Fort. The savings clause pertains exclusively to the service of process in civil and criminal proceedings. Black's Law Dictionary 1084 (5th ed. 1979), states:

"Process is defined as any means used by court to acquire or exercise its jurisdiction over a person or over specific property. [Citation omitted.] Means whereby court compels appearance of defendant before it or a compliance with its demands. [Citation omitted.]

". . . The word 'process,' however, as now commonly understood, refers to a summons, or, summons and complaint, and, less commonly, to a writ."

Thus, we see "process" means an order of a court. A warrantless arrest is action taken without process. The enactment of K.S.A. 27-102 indicates an intention of the State of Kansas to exercise certain legal rights in connection with the administration of justice on the territory ceded to the federal government but it does not authorize a warrantless arrest by Kansas police on the Fort.

It is next urged that since there is no controlling federal statute or regulation with regard to criminal jurisdiction on the Fort Riley military reservation, the common law on the date Kansas ceded it to the federal government is applicable.

We partially agree. The issue is governed by *Erie R. Co. v. Tompkins*, 304 U.S. 64, 82 L. Ed. 1188, 58 S. Ct. 817 (1938), where the court stated:

"Except in matters governed by the Federal Constitution or by Acts of Congress, the law to be applied in any case is the law of the State. And whether the law of the State shall be declared by its Legislature in a statute or by its highest court in a decision is not a matter of federal concern. There is no federal general common law. Congress has no power to declare substantive rules of common law applicable in a State whether they be local in their nature or 'general,' be they commercial law or a part of the law of torts. And no clause in the Constitution purports to confer such a power upon the federal courts." 304 U.S. at 78.

Thus, since there is no federal common law the common law of Kansas controls. The common law of 1872 did not recognize fresh pursuit warrantless arrests in misdemeanor cases. However, Kansas modified the common law by K.S.A. 1985 Supp. 22-2401a. It gave the Junction City police officer authority to make a warrantless arrest of Linda Riley on the Fort Riley military reservation for any crime committed outside the reservation and within the officer's territorial jurisdiction, when in fresh pursuit.

The judgment of the trial court is reversed and this case is remanded with directions to reinstate the complaint.

ALLEGRUCCI, J., not participating.